## STATE v. J. WALTER BROOM.

(Filed 25 November, 1942.)

**1. Jury §§ 5, 13: Constitutional Law § 27—**

In a prosecution for murder the action of the judge in discharging one of the jurors, upon finding he was incapacitated, and substituting the thirteenth juror in his stead, was timely and proper and in accordance with the statute. Public Laws 1931, ch. 103, as amended by Public Laws 1939, ch. 35.

**2. Criminal Law §§ 29b, 41b, 41d—**

In a criminal case there is no error in permitting the prosecutor to ask the defendant, when on the stand as a witness, questions about collateral matters, including charges of other criminal offenses and degrading actions, for the purpose of impeaching his credibility, if the questions are based on information and asked in good faith; but upon denial by defendant, the State is bound by his answers and affirmative evidence, in contradiction of his denial, is incompetent.

**3. Criminal Law §§ 41b, 41d—**

During the cross-examination of the defendant, in a murder trial, the prosecution, for the purpose of impeaching his credibility, asked him if he had not been engaged in committing abortions on women, showing certain articles and instruments and also asking defendant if they were not instruments used for producing abortions, all of which defendant denied, though admitting the ownership of some of the articles—the court then allowing the instruments to be offered in evidence. *Held:* Prejudicial error, and subsequent withdrawal of these exhibits comes too late.

APPEAL by defendant from *Burgwyn, Special Judge,* at August Term, 1942, of MECKLENBURG. New trial.

The defendant was charged with murder in two cases. In the one he was indicted for the murder of Mrs. Ruby Middlebrook, and in the other for the murder of Mrs. Eula Harkey. The two homicides occurred at the same time and place, and death resulted from gunshot wounds admittedly inflicted by the defendant. The defendant pleaded self-defense. By consent, the two cases were consolidated for trial.

The jury returned verdict of guilty of murder in the first degree in the case of Mrs. Middlebrook, and guilty of murder in the second degree in

the case of Mrs. Harkey. From judgments imposing sentence of death in the one case, and thirty years in prison in the other, the defendant appealed.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*
*Jake F. Newell and J. M. Scarborough for defendant.*

DEVIN, J. The slaying by the defendant of the two women named in the bills of indictment, on the occasion alleged, was not controverted. The defendant on the stand admitted the shooting and killing of both, but pleaded self-defense in each case. His counsel also offered evidence tending to show that the defendant was not mentally responsible at the time.

On his appeal to this Court the defendant assigns error in the denial by the trial judge of his motion for judgment of nonsuit as to the charge of first degree murder, but an examination of the record indicates the correctness of this ruling. Likewise, the action of the judge in discharging one of the jurors, upon finding he was incapacitated, and substituting the thirteenth juror in his stead on the panel, was timely and proper, and in accord with the statute. Ch. 103, Public Laws 1931, amended by ch. 35, Public Laws 1939. *S. v. Dalton,* 206 N. C., 507, 174 S. E., 422.

However, we think there was error in the ruling of the court as to the admission in evidence of certain exhibits in the case over the objection of the defendant.

During the cross-examination of the defendant, when he was on the stand as a witness in his own behalf, the solicitor, for the purpose of impeaching his credibility, asked him if he had not been engaged in committing abortions on women, and obtaining money from such unlawful practices. This the defendant denied. Then the solicitor, showing certain articles and instruments, asked him if these were not instruments used for producing abortions. This the defendant also denied. The defendant admitted ownership or possession of some of the articles about which he was questioned, but denied that others were his. The instruments were then offered in evidence as State's exhibits, and were admitted as such over the objection of the defendant. The defendant in apt time excepted.

There was no error in permitting the solicitor to ask the defendant, when on the stand as a witness, questions about collateral matters, including charges of other criminal offenses and degrading actions, for the purpose of impeaching his credibility. This was permissible if the questions were based on information and asked in good faith, however damaging the suggestion created by the questions might be. But when

the defendant denied the impeaching questions as to such collateral matters, and denied the commission of the acts about which he was cross-examined, as well as the unlawful purpose of the articles, the State was bound by his answers, and affirmative evidence in contradiction of his denial was incompetent. This evidence was improvidently and doubtless inadvertently admitted. It was in no way connected with the crime with which defendant was charged. *S. v. Wilson,* 217 N. C., 123, 7 S. E. (2d), 11.

The trial judge subsequently, realizing the evidence afforded by these exhibits was not pertinent, withdrew this evidence from the consideration of the jury, but we think this came too late. Some time had elapsed, and in the meantime twelve other witnesses had been examined. The impression made upon the minds of the jurors by these exhibits thus presented could not then be removed. *Gattis v. Kilgo,* 131 N. C., 199, 42 S. E., 584; *Parrott v. R. R.,* 140 N. C., 546, 53 S. E., 432; *In re Will of Yelverton,* 198 N. C., 746, 153 S. E., 319.

The Attorney-General argued that, if there was error in the ruling of the court below in this matter, it was in any event harmless. But considering the nature of the case, the character of the defense, and the serious consequences to the defendant, we are unable to concur in that view. These articles, relating to collateral charges, were offered and admitted as tangible evidence to contradict the denial of the defendant and tended unduly to degrade and discredit him. *S. v. Jordan,* 207 N. C., 460, 177 S. E., 333.

We conclude that the evidence afforded by the exhibits was incompetent and that the error in admitting them was material and prejudicial, necessitating a

New trial.