TROY SMITH v. WILLIAM C. PERDUE, ADMINISTRATOR OF THE ESTATE OF W. P. MOSER, AND WILLIAM C. PERDUE, ADMINISTRATOR OF THE ESTATE OF MAGGIE J. MOSER.

AND

WILLIS SMITH v. WILLIAM C. PERDUE, ADMINISTRATOR OF THE ESTATE OF W. P. MOSER, AND WILLIAM C. PERDUE, ADMINISTRATOR OF THE ESTATE OF MAGGIE J. MOSER.

(Filed 1 February 1963.)

**1. Evidence § 11;    Executors and Administrators § 24a—**

     In actions by husband and wife to recover for personal services rendered decedent, each is competent to testify for the other as to transactions between the decedent and the other tending to establish an agreement that the decedent should pay for the services. G.S. 8-51.

**2. Executors and Administrators § 24a—**

     The evidence in this case *is held* sufficient as to each plaintiff to show that each rendered personal services to each decedent upon an express contract that decedent would pay for such services either during his lifetime or in his will.

**3. Same;    Evidence § 39—**

     It is competent for witnesses to testify as to the value of personal services rendered a decedent when the testimony is based on services which they themselves actually saw rendered.

**4. Evidence § 29—**

     In an action to recover against the estate of husband and wife for personal services rendered them, it is competent for a witness to testify that the husband, after the death of his wife, stated that plaintiffs had cared for him and his wife in accordance with their agreement and that

he was sure that plaintiffs would continue to care for him, and that he planned to pay them well for their services, the declaration being competent as an admission against interest as to both estates, her net estate belonging to him, there being no children. G.S. 29-14(4).

**5. Executors and Administrators § 24a;   Trial § 16—**

In an action to recover for personal services rendered decedent, evidence as to the value of a tract of land owned by decedent is incompetent, but where the court withdraws such incompetent testimony and categorically instructs the jury not to consider it and in the charge stressfully instructs the jury that plaintiffs were entitled to recover only the reasonable value of the services rendered, the admission of such evidence will not be held prejudicial, it being apparent from the entire record that any prejudicial effects were removed by the instructions of the court.

**6. Executors and Administrators § 24d—**

Where personal services are rendered under an express contract for payment without specifying the amount of compensation, a promise to pay the reasonable value of such services is implied and plaintiffs are entitled to recover the reasonable value of such services.

APPEAL by defendant from *Carr, J.*, April 1962 Civil Term of ALAMANCE.

These two actions, each by a different plaintiff for personal services rendered the same two decedents over a period of approximately nineteen years, were consolidated for trial. The defendant is the duly appointed administrator of W. P. Moser and also of Maggie J. Moser, both of whom died intestate. The plaintiffs are husband and wife. Each alleged, and offered evidence tending to show, that from the spring of 1941 until the spring of 1960, he rendered services to W. P. Moser and his wife, Maggie J. Moser, upon the express promise of each to "fully and adequately compensate" plaintiff either during his lifetime or in his will but that no compensation was made. Mrs. Moser died on May 10, 1960 at the age of seventy-nine; Mr. Moser died on April 23, 1960 at the age of eighty-four. Plaintiff Troy Smith was the nephew of Mrs. Moser.

As to each plaintiff, the judge submitted the case to the jury on the hypothesis of both an express and implied contract. On the first, he charged the jury that the plaintiff would be entitled to recover the reasonable value of his services rendered each from March 1941 until decedent's death in May 1960; on the second, the reasonable value of such services rendered during the three years immediately prior to the death of each decedent. In both actions the jury found that the plaintiff had rendered services under a contract as alleged in the complaint and that he had not been paid. The verdict established that the estate

of W. P. Moser owed Troy Smith $17,884.00, and the estate of Mrs. Moser owed him $4,750.00; that the estate of W. P. Moser owed Willis Smith $4,940.00, and the estate of Mrs. Moser owed her $9,880.00 From judgment on the verdicts the defendant appealed assigning errors in the charge, in the admission of evidence, and the ruling on the motion for nonsuit.

*Clarence Ross, Thomas C. Carter and B. F. Wood for plaintiff appellees.*
*Allen and Allen for defendant appellants.*

SHARP, J.   Over objection, each plaintiff testified for the other. This was permissible procedure and defendant's assignments of error to the evidence thus elicited are not sustained. We have consistently held that in actions of this kind the relationship of husband and wife does not render the testimony of one for the other incompetent under G.S. 8-51. *Burton v. Styers,* 210 N.C. 230, 186 S.E. 248; *Bank v. Atkinson,* 245 N.C. 563, 96 S.E. 2d 837.

As a witness for her husband, Willis Smith testified that in March 1941 while they were visiting in the home of the Mosers, Mr. Moser said to him: "Troy, we are getting up in years and we have no children, and there will be lots of things we need to have done for us that we can't do ourselves. Will you do these things for us as long as we live? We will take care of you well for these services in our wills. I want you to have a tract of land, enough to make you a living and enough money to build a nice house." To this question she testified that her husband answered, "I will so long as you live." She further testified that Mrs. Moser was present when this conversation took place and she said, "We have talked this over many times and this is what I want, will you do it?" and he said, "Yes, I will so long as you both live."

Troy Smith, as a witness for his wife, testified that he heard both Mr. and Mrs. Moser tell her that she was doing what she was told to do in carrying out the plan and that she would be taken care of in their will.

Numerous other witnesses testified that at various times between March 1941 and May 1960, both Mr. and Mrs. Moser had declared that plaintiffs had more than fulfilled their promises; and that they would be repaid for all they had ever done for them.

The evidence of plaintiffs further tended to show the following facts:

Up until about 1945, when his physical condition forced him to give it up, Mr. Moser had operated a dairy farm. He suffered with high blood pressure, arthritis and urinary disturbances. Mrs. Moser

had a lung ailment, hypertension, cardiac enlargement, and circulatory disorders resulting from an embolism. Services rendered by Mr. Smith included cutting and hauling wood, feeding cattle, delivering milk, getting groceries, feeding chickens, mending fences cleaning the milk house, carrying Mr. Moser to the doctor, sitting up with him at night, and assisting with the periodic treatments his condition required. Mrs. Smith on occasion cooked and cleaned house, canned and froze produce, gave medicine and helped nurse. Plaintiffs, although they did not live with Mr. and Mrs. Moser, were on call day and night.

The evidence was plenary to overrule the motions of nonsuit.

Based on the services which they themselves actually saw rendered, witnesses testified that the value of Troy Smith's service to Mr. Moser was from $40.00 a week to $1,500.00 a year and to Mrs. Moser, from $20.00 a week to $750.00 a year; that the value of such services renderd by Willis Smith to Mrs. Moser was from $15.00 a week to $300.00 a year and to Mr. Moser, from $5.00 a week to $25.00 a month. This evidence was competent; its weight for the jury.

Over objection, the son of plaintiffs testified that on the afternoon after Mrs. Moser's death, Mr. Moser said to him, "Ronnie, Miss Maggie is gone. As you know, she died this morning. Willis and Troy have continued to care for us as they said they would and I am sure that they will continue to care for me and I plan to well pay them for this service." The court admitted this statement against both estates and the administrator assigns it as error in behalf of both. The statement was clearly competent as an admission against the estate of W. P. Moser. *Gidney v. Moore,* 86 N.C. 484; Stansbury, Evidence, Section 174; 31 C.J.S., Evidence, Section 334. It was likewise admissible against the estate of Mrs. Moser as a declaration against interest. Her net estate belonged to Mr. Moser. G.S. 29-14(4). He is now dead; the statement was against his pecuniary interest; the facts were within his personal knowledge; he made it at a time when there was no motive to misrepresent. *Roe v. Journegan,* 175 N.C. 261, 95 S.E. 495; Stansbury, *supra,* Section 147.

Without objection, Mr. and Mrs. Rainey Pope, witnesses for plaintiffs, testified that they heard Mrs. Moser say in the presence of Mr. Moser that there was a tract of land they wanted Troy to have; that they hoped he would build there and be closer to them or closer to the farm. Mrs. Addie West also testified, without objection, that both Mr. and Mrs. Moser told her they wanted Troy to have a twenty-one acre tract of land known as the peach orchard for a home. Over objection, she was permitted to testify that sometime during the last fifteen months of their lives Mr. Moser had declined an opportunity

to sell it because he had said he wanted Troy to have it. Also over objection, Mr. Pope testified that the peach orchard was worth $2,000.00 an acre in 1959 and 1960. However, at the conclusion of all the evidence, the judge instructed the jury not to consider the evidence as to the value of the land. He said, "The Court instructs you that you will erase it from your minds and not give any consideration to that evidence in making up your verdict in the case."

Evidence as to the value of the peach orchard was not competent. There is no suggestion in the case that either of the plaintiffs had agreed to render services in consideration of a devise or conveyance of the peach orchard. The suggestions were that Mr. and Mrs. Moser hoped plaintiffs would build on the peach orchard *during their lifetime* so as to be near them. This is inconsistent with an intent to devise the property to the plaintiffs. There is nothing in the evidence to indicate that the value of the peach orchard was the value which the parties themselves put on the services plaintiffs were to render to the Mosers.

However, admission of incompetent evidence, even though it is not withdrawn, is no ground for a new trial unless prejudice is shown. *Hunt v. Wooten,* 238 N.C. 42, 76 S.E. 2d 326. The court withdrew this incompetent evidence and instructed the jury categorically not to consider it. Ordinarily it is presumed that the jury followed such an instruction and the admission is not held to be reversible error unless it is apparent from the entire record that the prejudicial effect of it was not removed from the minds of the jury by the court's admonition. N. C. Index, Trial, Section 16. Whether the withdrawal of incompetent evidence has cured the error or created further prejudice is frequently a difficult question, and each case must be determined in the light of its own particular facts. *Driver v. Edwards,* 251 N.C. 650, 112 S.E. 2d 98.

The defendant contends that the evidence under consideration here was so prejudicial that its effect could not be removed by an instruction to the jury not to consider it. However, in the charge, the judge stressed very forcibly that plaintiffs were only entitled to recover the reasonable value of the services rendered. *Stewart v. Wyrick,* 228 N.C. 429, 45 S.E. 2d 764. He laid down the rule stated in *Beasley v. McLamb,* 247 N.C. 179, 100 S.E. 2d 387, "Where an express contract for services does not specify the amount of the compensation, a promise to pay the reasonable value of the services is implied, . . ."

The evidence was voluminous and conflicting. Thirty witnesses testified. Mr. Moser was an intelligent, industrious man. He was represented by counsel, and alert until a few days before his death.

The jury could have found that plaintiffs were paid for services as they were rendered and that their value was slight. However, it took the other view. The verdict was substantial, but when the jury found that the plaintiffs were entitled to recover for services rendered over nineteen years, we cannot say that the size of the verdict indicates that prejudice resulted from this incompetent evidence.

The defendant makes fifty-one assignments of error. Each has been considered, but obviously we cannot discuss them all. The issues of fact were submitted to the jury under a scrupulously impartial charge by an able judge. In the trial we find no prejudicial error.

No error.